JOHN S. HAGER v. JAMES SHINDLER AND SIMON SHINDLER.

JURISDICTION OF COURT OF EQUITY WHERE THERE IS A REMEDY AT LAW.—A Court of equity has jurisdiction at the suit of the judgment creditor who has purchased land at Sheriff's sale, and received a Sheriff's deed therefor, to annul and set aside, as a cloud upon title, a deed of the land given before the recovery of judgment by the judgment debtor, without consideration, and to defraud the creditor.

EQUITY AND LAW JURISDICTION.—Before a case can be considered as beyond the reach of a Court of equity, it must be made to appear that the legal remedy would be adequate and complete.

COMPLAINT IN ACTION BY CREDITOR AGAINST DEBTOR.—The complaint, in a suit in equity brought by the judgment creditor who has a Sheriff's deed of land, to set aside and cancel a deed of the same given by the judgment debtor before the recovery of judgment to defraud the creditor, need not aver that the plaintiff has exhausted his remedy at law by issuing an execution and having it returned *nulla bona.*

A CLOUD ON TITLE MAY BE REMOVED BY ONE NOT IN POSSESSION.—A judgment creditor need not be in possession of land to enable him to maintain a suit in equity, after he has a Sheriff's deed, to cancel a deed of the same given by the debtor to defraud him before he recovered judgment.

COMPLAINT BY CREDITOR TO CANCEL FRAUDULENT DEED OF DEBTOR.—A creditor who has purchased land of the debtor at Sheriff's sale, and obtained a Sheriff's deed therefor, in a complaint to cancel a deed given by the debtor to defraud him before judgment was recovered, need not aver that the debtor was insolvent when he made the deed.

DEED TO DEFRAUD CREDITORS.—A deed of land may be made to hinder, delay, and defraud creditors by a rich man as well as one who is insolvent.

CREDITORS BILL AND SUIT TO CANCEL FRAUDULENT DEED.—There is a distinction between a creditor's bill and a suit in equity by one who has a Sheriff's deed of land, to cancel a fraudulent deed of the same made by a debtor before the Sheriff's sale or recovery of judgment.

LIMITATION OF ACTION TO CANCEL FRAUDULENT DEED.—The judgment creditor who has received a Sheriff's deed of the debtor's land, may bring an action to cancel a fraudulent deed of the same made by the debtor before judgment, at any time within three years after the execution and delivery of the Sheriff's deed.

COMMUNICATION FROM CLIENT TO ATTORNEY.—Whether a communication by a client to his attorney was made in confidence, is a question of fact to be disposed of by the Court.

WHEN ATTORNEY MAY TESTIFY TO CLIENT'S COMMUNICATION.—If the attorney, while managing a suit for the client, receives a deed of the client's property without consideration, and then, at the client's request, deeds the property to another person without consideration, these facts are not privileged communications, and the attorney may be required to disclose them as a witness in a suit by a creditor to cancel the deeds.

CLIENT AND ATTORNEY—CONFIDENTIAL COMMUNICATIONS.—If, pending the relation of client and attorney, the client communicates to the attorney a fact foreign to the object for which the attorney was retained, the communication is not confidential.

PRIVILEGED COMMUNICATIONS FROM CLIENT TO ATTORNEY.—If an attorney is retained in an action, and the client after final judgment makes disclosures respecting the subject of the foregone employment, the communications are not privileged.

COMMISSIONER TO EXECUTE DEED.—The appointment of a Commissioner by the Court, in a final decree to execute a deed, if the defendant fail to do so within a given time; *Held,* not to justify the reversal of the judgment.

APPEAL from the District Court, Twelfth Judicial District, City and County of San Francisco.

The facts are stated in the opinion of the Court.

*E. Casserly*, for Appellants.

Where plaintiff has an adequate remedy at law, he cannot go into equity. (*Dewitt* v. *Hays*, 2 Cal. 463 ; *Lupton* v. *Lupton*, 3 Cal. 121 ; *Merrill* v. *Gorham*, 6 Cal. 42.)

If the conveyance of the lot in question to Simon Shindler be void as against the plaintiff, he could have brought ejectment. (*Jackson* v. *Seward*, 5 Cow. 67 ; *Jackson* v. *Myers*, 18 Johns. 426 ; *Jackson* v. *Mather*, 7 Cow. 301 ; *Chat. Co. Bank* v. *Risley*, 19 N. Y. 369, 371, 372, 375.) A general rule further is, that before coming into equity, the plaintiff should first have exhausted his remedies at law, by issuing execution and having it returned *nulla bona*, which the bill should show. (*Hulbert* v. *Grant*, 4 Monroe, Ky. 582, and cases cited ; *Heynemann* v. *Dannenberg*, 6 Cal. 380.) This rule is of invariable application to a bill filed by a creditor to reach equitable assets. The principle of it should reach this case, at least to the extent of requiring the plaintiff always to show, in asking equity to remove a cloud from the title to real estate bought by him under his own execution, that before selling his debtor's land, the personalty had been exhausted or that none had been found, as directed in the Practice Act. (Practice Act, 210, of " the execution.") Though when a stranger to the judgment purchases, the rule may be otherwise.

The plaintiff in this case sues with the rights of a " creditor " under the statute, not of a " purchaser." (*Ridgway* v. *Underwood*, 4 Wash. C. C. 129, 137 ; *Jackson* v. *Ham*, 15 Johns. 261.) A creditor is less favored than a purchaser, because the latter buys on the faith of getting a title to specific property, while the former has only a general right to have his debt paid out of any property of the debtor.

In New York the law may at length be deemed settled, (against many previous *dicta* at least,) so far as it can be by two most elaborate and conclusive judgments of a Court of marked ability and learning, (though not the appellate Court,)

which have not yet been disturbed, that a judgment creditor cannot come into equity to set aside a conveyance alleged to be a fraudulent obstruction to an execution, without showing execution issued. (*McCullough* v. *Colby*, 5 Bosw. 477, and see decision 487 to 496, reviewing all the authorities; *North American Fire Insurance Company* v. *Graham*, 5 Sandf. 197, 198, 204; see, also, *Neate* v. *Marlborough*, 3 Myl. & Cr. 407, 415–421, 14 Eng. Ch.)

The language of the complaint shows the fraud alleged in this case is under the Statute of Frauds of this State, and especially sections twenty and twenty-three. (Wood's Digest, 106, 107.) Those sections are a re-enactment without substantial change (as in the other States of the Union) of the English statutes of Elizabeth. Section twenty-three of our Act makes, however, an important change in the language, and in the meaning of the English statutes as re-enacted in the other States of the American Union, with the single exception, perhaps, of New York. It is as follows:

"The question of fraudulent intent in all cases arising under the provisions of this Act, shall be deemed a question of fact and not of law, nor shall any conveyance or charge be adjudged fraudulent as against creditors or purchasers, *solely* on the ground that it was not founded on a valuable consideration."

One clear effect of this statutory provision is to abolish forever in this State the whole doctrine of "constructive fraud," with all its undefined and therefore mischievous consequences in jurisprudence. "It may be," says the New York Superior Court, in *Nicholson* v. *Leavitt*, 4 Sandf. 287, "that the doctrine thus meant to be exploded has been in a measure revived by some modern decisions; but we are satisfied that to revive the doctrine is to repeal the statute."

A cause of action for fraud is barred in this State in three years from the fraud, and there is no pretense in this case that the plaintiff did not know the facts at the time when they occurred. (Act defining time of commencing civil actions, etc., Sec. 17, sub. 4, Wood's Digest, 47.) The fraud occurred

and the cause of action accrued at the date of the conveyance to Simon Shindler, March 21st, 1855. (*Sublette* v. *Jenkins*, 9 Cal. 425 ; *Pyle* v. *Beckwith*, 1 J. J. Marsh, 445 ; 2 Parsons' Contracts, 371, 372, edition of 1855, and cases cited in notes *w, x, y, z.*) This is undoubtedly the true rule in this case, as otherwise a plaintiff would have it in his power by his own will to postpone indefinitely the running of the statute, which, by all the authorities, he never can do. Or, at all events, the cause of action accrued at the date of the Sheriff's sale to the plaintiff, February 2, 1856. (*Cox* v. *Cox*, 6 Richardson's Eq., S. C. 275 ; *McDonald* v. *May*, 1 Rich. 91 ; *Thrower* v. *Cureton*, 4 Strobhart's Eq. 155, S. C.) In either view the action was barred at its date, more than three years having elapsed.

The testimony of E. B. Mastick, a witness for the plaintiff, was inadmissible and incompetent within the established doctrine as to communications between attorney and client ; and the Court erred in admitting it against the objections of the defendants respectively. (1 Phillips' Ev. 158, 159, N. Y. Ed. 59 ; *Williams* v. *Fitch*, 18 N. Y., 4 Smith, 551 ; *Bank of Utica*, v. *Mersereau*, 3 Barb. Ch. 595 ; *Turquind* v. *Knight*, 2 Mees & W. 98 ; *Taylor* v. *Blacklow*, 3 Bingham N. C. 235 ; *Peter* v. *Watkins*, 3 Bingham N. C. 421; *Clayton* v. *Skinner*, 2 Swaust, 221 ; *In re Aitkins*, 4 Barnw. & Ald. 47 ; *Foster* v. *Hall*, 12 Pick. 89.)

The communication or the knowledge is privileged within the rule, though it be made to or acquired by the attorney in view or for the purpose of a contemplated fraud. (*Bank of Utica* v. *Mersereau*, 3 Barb. Ch. 528, 598–600, and cases cited; *Parker* v. *Carter*, 4 Munf, 273 ; *Cormack* v. *Heathcote*, 2 Brob. & Bing. 4 ; *Shellard* v. *Harris*, 5 Carr. & P. 593 ; *Landsberger* v. *Gorham*, 5 Cal. 450 ; *Bowman* v. *Norton*, 5 Carr & P. 177.)

*Delos Lake*, for Respondent.

The appellants' proposition that the Simon Shindler conveyance may be attached for fraud in an action of ejectment, and therefore equity has no jurisdiction to decree it to be fraudulent and void, is not sustained by any of the authorities

cited, and is untenable. The following authorities are con-
clusive : *Hildreth* v. *Sands*, 2 John. Ch. 35 ; same case, 14
John, 493 ; *Mohawk Bank* v. *Atwater*, 2 Paige Ch. 54 ; *Wil-
lard's Eq. Juris.* 145 ; *Boyd* v. *Dunlap*, 1 John. Ch. 479 ;
*Dane* v. *Zignego et al.*, October term, 1863.

The foregoing authorities are also an answer to the appel-
lants' fourth point, viz : that the plaintiff must fail in the
action, because he was not in possession at the time the suit
was commenced.

The plaintiff sues with the rights of a purchaser at the
Sheriff's sale, and stands in the same situation that he would
if he had been a stranger to the judgment instead of being the
judgment creditor. He is not pursuing the defendants as a
" creditor," but as the *owner* of this land. He is invested,
undoubtedly, with the same rights that he had as a judgment
creditor to question the validity of the conveyances. In this
sense he, as purchaser, may be said to have the rights of a
creditor. (See remarks of Mr. Justice Spencer, in *Sands* v.
*Hildreth*, 14 John. 497.)

The substantive cause of action is not the fraud of the
Shindlers in passing the apparent title by the sham deeds, as
the appellants' counsel erroneously supposes, but that the
plaintiff has acquired a good title to the land by virtue of the
judgment and execution sale and Sheriff's deed, and that Simon
Shindler holds a void conveyance of a prior date, which,
though good in form, is void in fact for fraud, and therefore a
continuing cloud on the plaintiff's title ; and the fraudulent
acts, as set forth in the complaint, are stated for the purpose
of showing that the conveyance is, in fact, void as against the
plaintiff, and a cloud on his title, which a Court of equity
ought to dispel. (2 Story's Eq. Juris., Secs. 699, 700, *et. seq.;*
*Pettit* v. *Shepherd*, 5 Paige, 492, 501 ; *Van Doren* v. *The
Mayor of New York*, 9 Id. 388.)

But even if the action is one against which the statute
would run, it has not yet barred the action.

The appellants' counsel has overlooked the fact that the
Sheriff's deed to the plaintiff was made October 3d, 1857, and

this action was commenced January 6th, 1860, less than three years thereafter. No cause of action accrued to the plaintiff, as purchaser, till he became the owner of the legal title. (Angel on Limitations, p. 55.)

The Sheriff's sale was December 10th, 1856, instead of February 2d, 1856, as stated in appellants' brief.

The appellants' counsel objects that the testimony of Mr. Mastick was inadmissible, under the rule that an attorney at law is not at liberty to disclose communications had between attorney and client. The rule undoubtedly is that an attorney will not be permitted to testify to communications made by his clients for the purpose of legal advice or aid upon the subject of his rights and liabilities. (1 Greenleaf's Ev., Sec. 240.) But this probably is the first case in which it was ever contended that the rule extended to the case where an attorney was an actor and party in the business—as the grantee in one conveyance, and grantor in another.

Greenleaf (Vol. 1, Sec. 242) says: "The rule is limited to cases where the witness learned the matter in question only as counsel, solicitor, or attorney, and in no other way. If, therefore, he was a party to the transaction, and especially if he were a party to the fraud, or, in other words, if he were acting for himself, though he might also be employed for another, he would not be protected from disclosing, for in such a case his knowledge would not be acquired solely by his being employed professionally."

So, where the attorney makes himself a subscribing witness, he thereby assumes another character for the occasion, adopts the duties which it imposes, and is bound to give evidence of all that a subscribing witness can be required to prove. (Id., Sec. 244.)

*A fortiori*, an actual party to the instrument.

None of the cases cited by appellants' counsel touch the question. Besides, Mr. Mastick was never the attorney for Simon Shindler.

It may be stated as a general proposition that a Court of equity has all the powers necessary to render its decrees

effectual. If it can act directly upon the property which is the subject of the suit, it may transfer the title by any convenient method. If the holder of the title be within reach of process, he may be compelled by attachment to execute the necessary conveyance. If he contumaciously refuse, or be beyond the jurisdiction, so that an attachment will not reach him, or if he be an infant, incapable of acting, the Court may appoint another to execute a conveyance on his behalf. Such has been the uniform practice in this State, and many titles to valuable lands are doubtless held under such conveyances. (*Yoden* v. *Stanford*, 7 Monroe, 478; *People* v. *Boring*, 8 Cal. 406.)

A case has recently been decided by the Supreme Court of the United States, (*Brignardello* v. *Matilda C. Gray*,) on a writ of error to the United States Circuit Court for this State, where it is said this precise question was presented, and the power was sustained.

By the Court, SHAFTER, J.

The complaint in this action alleges that the plaintiff is the owner of a certain lot in the City and County of San Francisco, under and by virtue of a Sheriff's deed executed to him as the purchaser of said lot at an execution sale on the 10th day of December, 1856. That the execution issued upon a judgment in his favor against the defendant, James Shindler, and one Leonard, rendered February 2d, 1856. That at the time of the sale the lot was, and for several years had been, the property of James Shindler. That pending the action in which the plaintiff's judgment was recovered, James Shindler conveyed the lot to E. B. Mastick, who conveyed it thereafter to Simon Shindler. That both conveyances were voluntary and were made with intent to delay and defraud the creditors of James Shindler, of whom the plaintiff was one. The bill prays, amongst other things, that the deeds, respectively, may be decreed to be fraudulent and void. The case was tried by the Court—the findings were in favor of the plaintiff, and the

appeal is from the judgment, and from the order denying the defendants' motion for a new trial.

*Right of purchaser at Sheriff's sale to go into equity, to have a fraudulent deed of the judgment debtor set aside.*

First—It is claimed on behalf of the appellants that the case made is not within the equity jurisdiction, and the reason assigned is, that relief at law, by ejectment, would be adequate and complete.

In support of this proposition we are referred to *Dewitt et als.* v. *Hays*, 2 Cal. 463 ; *Lupton* v. *Lupton et als.*, 3 Cal. 121 ; *Merrill* v. *Gorham*, 6 Cal. 42. We have examined these cases. They recognize the general rule that the equity jurisdiction is limited to cases where there is no remedy at law or none that is plain, adequate and complete ; but they throw little or no light upon the question as to whether this particular case is within the rule or without it.

It is not enough that the plaintiff could have established his title as against the title of Simon Shindler, in an action of ejectment. Before the case can be considered as beyond the reach of a Court of equity, it must be made to appear that the legal remedy would be adequate and complete.

The appeal here is to that branch of the concurrent jurisdiction in which the peculiar remedies afforded by Courts of equity, constitute the principal ground of jurisdiction. The relief asked is, that certain deeds, alleged to be fraudulent, may be cancelled by decree. The bill is brought upon the principle of *quia timet;* that is for fear that the deeds may be vexatiously or injuriously used against the plaintiff when the evidence to impeach them may have been lost. The justice invoked is not remedial so much as precautionary or preventive. If an instrument ought not to be used or enforced, it is against conscience for the party holding it to retain it, since he can retain it only for some sinister purpose. If it is a deed purporting to convey lands or other hereditaments, its existence in an uncancelled state necessarily has a tendency to thrown a cloud over the title ; and it is always liable to be

applied to improper purposes. Preventive justice is what is needed, and a Court of law has no power to administer it. (*Shattuck* v. *Carson*, 2 Cal. 588.)

*Right of purchaser at Sheriff's sale to have fraudulent deed of judgment debtor set aside in equity before an execution is returned* nulla bona.

Second—It is further insisted that the complaint is substantially defective for the reason that there is no allegation showing that "before coming into equity the plaintiff had exhausted his remedies at law by issuing execution and having it returned *nulla bona.*"

The purpose of the bill is not to reach equitable assets with a view to satisfy an unpaid judgment, or an unpaid balance of a judgment; but to clear up a title already vested by dissipating a cloud upon it. Whether the plaintiff sues as "creditor" or as "owner" is in one sense more a question of fact than of law. That he sues and asks relief in the latter capacity is apparent on the face of the complaint; and that he is owner in judgment of law does not admit of controversy, if all the allegations of the complaint be assumed. Taking the plaintiff, then, to be the owner of the land, the only question must be: is he entitled to the relief prayed for? But that is the question upon which we have already passed. Though the plaintiff is a purchaser suing and asking relief as such, still his title has its origin in the relation of creditor and debtor; and as against the deed of Simon Shindler, the relative strength of the opposing titles is to be determined by the law governing that relation, and not by that applicable to conveyances at large. A purchaser of land at execution sale, when he receives his deed becomes the owner of the land if the debtor owned it at the time of the sale; and in all proceedings looking to a vindication of his title, the purchaser must necessarily present himself as proprietor and ask relief as such. But though he sues as owner, still he is clothed with the rights of the creditor, and stands in his place so far as may be necessary for the protection of his own title. The point was decided directly in

*Ridgeway* v. *Underwood,* 4 Wash. 129, and *Hildreth* v. *Lands,* 2 John. Ch. 49; S. C. 14 John. 497; *Dane* v. *Zignego et al.,* October term, 1863.

*Purchaser of land at Sheriff's sale may go into equity to set aside a fraudulent deed of the judgment debtor without being in possession.*

Third—It is urged, further, that the judgment cannot be sustained for the reason that the complaint does not show the plaintiff in possession of the land at the beginning of the action.

This is not a suit to quiet title, under the two hundred and fifty-fourth section of the Practice Act.   In an action of that impression the title, and the whole title, of each of the parties is, or may be, drawn in question, and both parties are concluded by the judgment.   This suit seeks the cancellation only of a particular muniment of title, and touches title only as it touches the muniment.   But the point was decided in *Dane* v. *Zignego et al.,* previously cited, and the decision meets with our full concurrence.   The Court said in that case: "The mere fact that the plaintiff is not in possession of the property can make no difference, as his right to have the fraudulent deed cancelled does not depend upon any such fact. Neither is it necessary for him to have previously had his title tried in an action at law.   Indeed one important object of the plaintiff in bringing his suit in equity to obtain a decree cancelling the deed, under the old system of practice, was the better to enable him to prosecute his action at law to recover the posssession of the premises by removing an obstacle to his recovery.

*Purchaser of land at Sheriff's sale who files a bill to set aside a fraudulent deed of the judgment debtor need not aver his insolvency.*

Fourth—It is claimed that the complaint is fatally defective, for the reason that there is no allegation that James Shindler was insolvent when he made the first deed, or when he directed the second.

The complaint charges the judgment, the execution thereon,

8

the purchase by the plaintiff and the Sheriff's deed to him. That, *pending the action in which the judgment was recov-*ered, James Shindler conveyed to Mastick and he to Simon Shindler by request of James; that both deeds were without consideration; that both were made with intent to hinder, delay and defraud the plaintiff and other creditors of James Shindler, to whom he was largely indebted; that Mastick took and held in secret trust for James Shindler; that Simon Shindler took and held in secret trust for James Shindler, also, " and with the intent to aid and abet him in hindering, delaying and defrauding his creditors." The truth of these allegations being given, they, in our judgment, present a perfect basis for the equitable relief asked for in the bill.

There is a class of cases in which a party seeking the relief of injunction must aver that the defendant is insolvent; and if a judgment creditor brings a bill to reach equitable assets, he must aver insolvency, or, what is equivalent to it, an execution returned *nulla bona.* In these cases, insolvency is *per se* a condition of relief; a fact, in short, without which a Court of equity can have no jurisdiction to act in the given instance. It is one of the ultimate facts to be proved, and hence the necessity that it should be averred. But in a case like the one at bar, "insolvency" is not a fact of jurisdictional consequence, nor is it *per se* a condition of relief. The facts upon which the jurisdiction rests, and on which the relief is granted, are stated categorically in the Statute of Frauds, and insolvency is not of the number. Section twenty provides, in effect, that every conveyance, made to defraud creditors, shall be void as to them, whether the deed was on consideration or without it; but section twenty-three provides that no conveyance shall be adjudged fraudulent as against creditors or purchasers, "solely on the ground that it was not founded on a valuable consideration." Whether a voluntary deed should be considered fraudulent, as such, as to existing creditors, without proof of any fact extraneous to itself, was a question that had long vexed the tribunals (1 Story's Eq. Juris., Sec. 365), and section twenty-three was made a part of the Act

referred to, for the purpose of putting an end to the contro-
versy. (*Nicholas* v. *Leavitt*, 4 Sandf. 287.) As the aw now
stands, then, a conveyance cannot be set aside by an " exist-
ing " creditor, on the ground solely that it was voluntary. A
complaint framed, for the purpose named, while stating that
the deed was without consideration, should aid or help out
that averment; not by averring insolvency, for that is but a
circumstance; not by averring generally that the deed was
" fraudulent," for that is but a conclusion of law; but by
averring the fact, superadded by the statute, to wit: that it
was made with the " intent to hinder, delay or defraud credi
tors." The state of the grantor's worldly affairs may be used
as evidence to elucidate the intent if disputed; but as matter
of pleading, it is not necessary that insolvency should be
averred in the complaint; and for the obvious reason that the
fact does not enter as a term into the legal proposition. A
rich man may make a fraudulent deed as well as one who is
insolvent.

The point made has, moreover, passed into judgment. In
*Sands* v. *Hildreth*, 14 John. 498, the Court say: " It has been
urged that Comfort Sands (the fraudulent grantor) might have
had property abundantly sufficient to satisfy his creditors inde-
pendently of the lands sold to the respondent (the holder of
the Sheriff's deed.) This, however, is not proved; and if it
were true, the appellant (the fraudulent grantee) was bound
to make out the fact." If the burden of proving solvency is
upon the party claiming under the fraudulent deed, it cannot
be true that the party attacking it should allege the contrary.

As to the deed to Mastick, inasmuch as the complaint shows
the title out of him, it is enough that he in fact held the title
in naked trust for his grantor, even though the trust was
created for an honest purpose. This is the clear result of the
eleventh section of the Statute of Frauds. And as to the deed
to Simon Shindler, the complaint alleges not only that he took
in secret trust for James Shindler, but " with intent to aid and
abet him in hindering, delaying and defrauding his creditors,
and especially this plaintiff."

We have been referred, in support of the objection now under consideration, to *Kinder* v. *Macey*, 7 Cal. 206; *Harris* v. *Taylor*, 15 Cal. 348; and *Meeker et al.* v. *Harris et al.*, 19 Cal. 278. The first and second cases were creditors' bills brought to reach equitable assets; and in the third case the intervention was filed for that purpose. The distinction between the complaint in this action and a creditor's bill has already been pointed out, and the reasons why an averment of insolvency, though essential in the one case, is not essential in the other, have been sufficiently indicated.

*Limitation of time within which purchaser at Sheriff's sale may commence an action to set aside a fraudulent deed of the judgment creditor.*

Fifth—It is insisted that the complaint shows on its face that the action is barred by the Statute of Limitations.

The cause of action does not consist in the detached or isolated fact that the deeds in question were given with the intent charged. The gravamen of the complaint is that the plaintiff, as owner of the land, is liable to be injured by the deeds if they are allowed to remain uncancelled. The particular danger which the plaintiff seeks to avert neither is nor can be older than the title which it threatens. True, the deeds were given more than three years prior to the commencement of the action, but they foreboded no injury to the plaintiff's title when they were given, for at that time he had no title. In short, the plaintiff's right to bring this action does not antedate the facts in which it has its origin. The plaintiff became the owner of the land on the 3d day of October, 1857, when he received the Sheriff's deed; and he had then, for the first time, a title to be clouded. The action was brought within three years thereafter. It is no answer to say that the plaintiff while yet a judgment creditor might have sued in that capacity for the purpose of reaching the land as equitable assets. Such action would have differed from this both in gravamen and relief. There are obvious correspondences between the two actions, but there are specific differences between them also, and they are too manifest to be disregarded.

*When attorney may be compelled to testify to matters occurring between himself and client.*

. Sixth—It is claimed that the judgment should be reversed on the ground that the testimony of the witness Mastick was improperly admitted.

Mastick was called as a witness by the plaintiff for the purpose of proving that the conveyance by James Shindler to him and the conveyance by him to Simon Shindler, were both without consideration. The witness testified that he was a lawyer, engaged in practice in the City and County of San Francisco in the years 1853–4 and 5, and that "all of his knowledge concerning the matters connected with the issues was acquired by him as an attorney of James Shindler, and in the course of his communications with him as such; that his professional relations with James Shindler continued from early in 1854 until 1855, and until after all the transactions in question were disposed of, and that but for these relations he would not have had any connection with the matter at all." The plaintiff thereupon proposed to prove by a witness that both the conveyances aforesaid were voluntary; the defendant James Shindler, by his counsel, objected to the introduction of the evidence. The objection was overruled, and the defendant excepted.

The witness testified as follows: "Some time in 1854 I brought a suit for James Shindler against Samuel Youngs, of Sacramento City, and attached certain real estate there, which was then mortgaged to a woman, who placed the mortgage with a banker, who foreclosed it after the attachment. We then believed there was a margin between our attachment and the mortgage lien, and we determined to redeem; to do which it was necessary to raise some money. When the time for redeeming arrived, James Shindler had, I think, left the State. I consulted with Gray—Hawes was here too—and Shindler's power of attorney authorized a sale, but not a mortgage. The land was conveyed to me, that I might raise money by mortgage, which we had then negotiated. Gray then conveyed to

◊

me under his power. I had then negotiated with G. J. Hubert Saunders, as agent of Rebarb·Bros., to procure the money. I think I borrowed six thousand dollars, which I think I passed over to Gray. After a little, property began to fall in Sacramento and our supposed margin vanished. No redemption was made. I do not know what became of the money after it passed out of my hands. After a little time I applied to Saunders, and he consented that the mortgage should be discharged. I was then authorized by Joseph Hawes, and I think by Gray, to go to Horace Hawes for the money. I took an order or check for the money, by whom signed I do not remember, to G. J. Hubert Saunders. In an hour I got the money of Horace Hawes, took it to Saunders and got satisfaction, which was genuine. Subsequently I made a conveyance to Simon Shindler, March 21st, 1855, recorded at my request March 27th, 1855. I consulted Gray, attorney in fact of James Shindler. It was done with his assent and under his direction. I received nothing and had no interest in the property. I know that it was a regular business transaction. There was no sham or fraud about it. \* \* I do not remember that the suit of *Hager* v. *Shindler* was ever spoken of by James Shindler or any of the parties in connection with any of these conveyances. Nothing was ever said as to the object of the conveyance from me to Simon Shindler. As I paid nothing for the property, I could not have received anything for it. The conveyance to Simon Shindler ended my connection with the entire business."

Questions arising under the law of " privileged communications " have been presented for judicial consideration under a great diversity of aspects, and the decisions in each of the different classes of cases have been greatly multiplied—one decision following and being, in effect, but a reproduction of others which have preceded it on the common line. But there is one aspect in which, so far as we are advised, the general question has been presented in two instances only : *Harvey* v. *Clayton*, 2 Swanst. 232, and *Jones* v. *Pugh*, 1 Phil. 96. The distinguishing feature of these cases is found in the fact that pend-

ing the relation of client and attorney, the parties entered into another contract relation differing in essential character, but still ancillary to the purpose for the accomplishment of which the principal relation was formed. We shall have occasion to consider these cases more particularly hereafter, but dismiss them from further consideration for the present with the remark, that the fact that they are distinguishable from all others in the particular named, demonstrates the settled disinclination of both the English and American bar to embarrass themselves in the discharge of their strictly professional duties by the acceptance of trusts which, as lawyers, they cannot be said to have invited.

It appears that the witness in this case was called for the double purpose of proving that he held the land conveyed to him by James Shindler in trust for his grantor, and that Simon Shindler, his own grantee, held in trust for the same party. These results the plaintiff proposed to establish by testimony drawn from the witness that both conveyances were without consideration.

I. We shall in the first place consider the admissibility of the testimony in its bearings upon the deed of James Shindler to the witness.

For the purposes of discussion, it may be assumed that all the knowledge of the witness as to whether the deed was given with or without consideration, was " communicated " to him by James Shindler as his client, and in the ordinary course of professional employment; leaving the question whether the communication was or was not confidential as the only point to be decided.

*Prima facic,* all communications made by a client to his attorney or counsel, connected with the purposes with a view to which the relation was entered into, must be regarded as confidential. But the presumption is not conclusive. If it appears by extraneous evidence, or from the very nature of the transaction, that confidence was not, and on the maxims by which human nature is ordinarily governed, could not have been contemplated, then the fact communicated may be proved

by the testimony of the attorney. In *Gown* v. *Emery et al.*, 18 Maine, 82, Kinsman, counsel of Buxton in another action, was called to prove by whom he was employed. The Court say : "We cannot consider this as a matter of professional confidence, at least, unless counsel is apprised or has reason to believe that his client desires that this fact should be concealed. No such inference is to be drawn from the testimony of the witness. Buxton made no intimation of a wish not to be known in the business. He solicited no advice tending to produce such an impression upon the mind of the witness. When the counsel (the witness) delivered the writ to the officer (Gower) the latter might well have inquired by whom he was to consider himself employed. An answer truly made to that inquiry would have been no breach of the privilege of his client. It would have disclosed his principal to a party having a right to know, in a matter neither communicated as a secret, nor of a character requiring any reserve on his part. That the witness was employed by Buxton and was directed by him to follow the orders of Stimpson, might, without any violation of confidence, so far as we can discern, have been made known to the officer, and was in our judgment testimony legally admissible." We have cited this case for the purpose simply of showing that whether a communication by a client to his attorney was made in confidence, is a question of fact, to be disposed of on principles applicable universally to questions of that character.

We must assume that the Court below passed upon the point as involving a matter of fact, and found that Mastick's knowledge of the voluntary character of the deed was not confidential ; and we consider the finding to be well sustained by the evidence.

In the first place, there can be no pretense that the deed itself was executed in confidence, however it may have been a " communication " in the larger definition given to that term by many of the authorities. The deed was made with a view to publicity, and Mastick formally published it to the world seven days after its delivery by causing it to be recorded.

That the voluntary character of the deed was not known to Mastick in confidence is apparent also. The deed, so far as Mastick's testimony goes, was made for an honest purpose, and there was, therefore, no motive for secresy. The purpose was to raise money with which to redeem the lot in Sacramento from a prior lien, so that the lien of Shindler's judgment might be made available. This purpose was not fraudulent as to Shindler's creditors, nor was it necessarily injurious to them; but, on the contrary, had the purpose been accomplished, their chances for collecting their debts would have been promoted. Mastick states that the deed looked to the redemption named as its sole object, and that beyond that nothing was talked about or thought of.

It is settled that if a client, pending the relation, communicates to his attorney a fact foreign to the object for which the attorney was retained, the communication is not to be regarded as confidential. The scope of the confidence is as the scope of the purpose. Each is considered to be the exact measure of the other. In this case the sole purpose was to raise money, to be used by the client for the preservation of a right; and to that end, whether the deed in question was on consideration or without it, was a matter of entire indifference from the beginning. So far as results were concerned, a power of attorney to Mastick to borrow money and to mortgage to secure the loan would have put him in a position to do all that he was expected to do as grantee under the deed. Had Gray's power of attorney from Shindler authorized him to borrow and mortgage, it is apparent on the face of the testimony that the conveyance to Mastick would never have been made. This demonstrates how utterly foreign to the purpose for which the witness was professionally employed was this question of consideration, in the judgment of parties, at the time the deed was given.

In the decision previously rendered, we considered the case as falling within the analogy of *Harvey* v. *Clayton*, 2 Swanst.

9

232, and *Jones* v. *Pugh*, 1 Phil. 96. We are now satisfied that in that particular we were mistaken. In *Harvey* v. *Clayton*, the defendant, a scrivener, had loaned money, intrusted to him by his clients, to the ancestor of the plaintiff. The securities were taken by the defendant in his own name, holding them in trust for those to whom the money belonged, and for whose benefit the securities were in fact given. The bill was brought to compel the trustee to disclose the names of the beneficiaries in the trust. The defendant answered that he was ready to receive his principal and interest, and to give to the plaintiff a discharge, or to continue the loan on payment of principal and interest; but as to discovery of the money or trust, he pleaded that he was a scrivener, and trusted with men's estates, and demanded the judgment of the Court whether he should be obliged to discover. The plea was allowed, "for it was safer for the plaintiff to be ignorant of the trust than to have notice of it, but it may be a ruin to the defendant in his trade to discover it, for no man hereafter will employ him. And what if it be the money of a recusant convict, person outlawed, etc.? Shall the debtor be revenged of his creditor, and wound him through the sides of his scrivener?"

There, as here, the legal adviser had consented to stand to his clients in the non-professional relation of trustee. There, as here, the trust was accepted as subservient to the purpose for which the principal relation was entered into. Thus far that case and the case at bar are analogous; but there is no further correspondence between them. There the adviser was interrogated with a view to discovery only; here with a view to discovery and relief. There the facts inquired after were not essential to any right which the plaintiff proposed to assert in that or any other action, nor to any duty which he proposed to perform then or thereafter; while, on the other hand, if the discovery had been granted it might have prejudiced the attorney and his clients; and, as it would have notified the plaintiff of a dormant equity, the position of the plaintiff would have been rendered "less safe." But while the Court considered that the knowledge of the defendant as to the existence

of the alleged trust, its terms and the names of the beneficiaries was acquired by "communication" from his clients within the larger definition of the term, and in the due course of professional employment, it also obviously considered, on the averments of the plea, the facts to have been communicated in confidence. The facts having come to the knowledge of the defendant in the course of professional employment, the intendment, as previously suggested, would be that he knew them confidentially; and in that case there was nothing in the nature of the transaction nor in matters extraneous to rebut the presumption. "Confidence" was in fact alleged as a fact in the plea. Here, however, the presumption is irreconcilable not only with sundry direct statements of Mastick, but with the scope and purpose of the transaction also.

The other case, *Jones* v. *Pugh*, 1 Phil. 96, follows *Harvey* v. *Clayton*, and is like it in every substantial particular; and the result is, that the testimony of Mastick, that Shindler's deed to him was without consideration, was in our opinion properly admitted, on the ground that his knowledge of the fact was not within any confidence reposed in him by his client. It may be true that the testimony, in so far as it disclosed the object of the conveyance, was improperly admitted. But the original purpose, with a view to which the deed was executed—the redemption of the Sacramento lot—was not unlawful in itself, nor could the discovery of it have prejudiced the defendants. Mastick's testimony could have affected the result only in so far as it bore upon the disputed question of consideration.

II. As to the admissibility of Mastick's testimony that his own deed to Simon Shindler was without consideration, we have no doubt.

In the first place, the relation of client and attorney *quoad* the purpose for which the first deed was given, was not on foot at the time when the deed now in question was executed. It is settled, if an attorney is retained in an action, and the client after final judgment makes disclosures respecting the subject of the foregone employment, that the communication

is not privileged. Here the borrowed money, as Mastick's testimony tended to prove, was returned, the securities given up to be cancelled, and the very project of redemption about which Mastick had been professionally employed, was definitively abandoned in advance of the second deed. Or if Mastick's employment was to collect Shindler's debt without special reference to the lot or the redemption of the lot in Sacramento, still his deed to Simon Shindler could have had no connection with any such result. In the matter of that deed Gray, the attorney in fact of James Shindler, approached Mastick simply in his capacity of trustee of the title, holding it no longer for professional uses. The direction to convey to Simon Shindler went, not on the ground that it was the professional duty of Mastick to convey, but on the ground that it was his duty as trustee to execute such estates in the trust property as the beneficiary should direct. It does not appear that Mastick was consulted concerning effects and consequences, and he says in terms: "I do not remember that the suit of *Hager* v. *Shindler* was ever spoken of by James Shindler or any of the parties, in connection with any of these conveyances. Nothing was ever said as to the object of the conveyance from me to Simon Shindler; I know that it was a regular business transaction." However, then, the conveyance to Mastick, with its incidents, may have become known to Mastick by "communication" from his client, it is apparent that the conveyance by him, with its incidents, became known to him only in his capacity of trustee. It was made after the relation of client and attorney was practically ended, or, if not, then it was made with reference to no end concerning which Mastick was ever professionally employed or consulted.

Seventh—It is urged that the findings are not sustained by the evidence.

We have examined the evidence. The case does not belong to the class in which we hold ourselves at liberty to go behind the findings.

Eighth—The objection that the judgment is not supported by the findings is overruled. The questions raised by counsel

under this head are identical with those raised upon the sufficiency of the complaint.

*Appointment of a commissioner by the Court to make a deed.*

It is insisted, however, that the judgment should be modified, if not reversed. The objection taken is to that part of the decree appointing a commissioner to execute to the plaintiff a deed of all the right, title and interest of Solomon Shindler in the land, in the event that Shindler should not make such conveyance himself within twenty days.

The point made is that without a statute there is no authority for such a direction. It may be added that no authority is produced against it. The question is left by counsel unargued. Probably the strongest objection that can be urged is that the direction was unnecessary, inasmuch as the decree pronouncing the adverse deeds to be null and void, executed itself and left the plaintiff in full enjoyment of the title acquired by his Sheriff's deed. A deed from Shindler must be regarded as non-essential, for the decree settles that he has nothing to convey. But as the error, if there be one, " does not affect any substantial right " of the defendants, (Prac. Act., Sec. 71,) the objection must be overruled.

Judgment affirmed.

SAWYER, J., concurring.

I do not think the matters offered to be shown by the witness, Mastick, are within the rule or the principle of the rule at common law protecting confidential communications, as deduced from the cases ; and section three hundred ninety-six of the Practice Act, in my judgment, does not extend the principle.

James Shindler conveyed certain lands to Mastick, and Mastick subsequently conveyed the same lands to Simon Shindler, the father of James. These conveyances were claimed by plaintiff, a creditor of James, to have been made without consideration and with intent to defraud him. They were there-

fore claimed to be void as to him. The whole scope of the proof offered, was, that the conveyance was made by James Shindler to Mastick, and also by Mastick to Simon, without consideration. This is the substance of the testimony. Whatever was said beyond this was not called for by plaintiff, and was merely exculpatory; and, so far as it went, was clearly to the advantage of the objecting party. The fact that Mastick neither gave nor received any consideration for the conveyances made to and by him, was not, in my opinion, a " communication made by the client to him, or his advice given thereon in the course of his professional employment," within the meaning of the rule or the statute. It is true that Mastick may have been employed to act as broker, or agent of Shindler, because he was also his professional adviser. But this is no part of his professional duty. Any other party might just as well have performed this service, and acted as the medium of carrying out Mastick's professional advice. But by taking on himself this new office, Mastick became a party acting in the transaction, by which it is claimed that a fraud was perpetrated; and it matters not that he had no personal interest in the transaction, and reaped no benefit from the fraud, if any there were. The fact proved had no previous existence. It was brought into being by the witness becoming an actor in a transaction that had no professional character. In this he was acting as a medium for transmitting an estate, without consideration, from James to Simon Shindler, and not in receiving a communication for professional purposes, or in giving professional advice.

It is admitted that there are exceptions to the rule, or rather cases that do not come within it, and that one of them is, where "an attorney is a party to the transaction, and especially if he is a party to a fraud," "if he were acting for himself." If he is in fact a party to the fraud, or to the fraudulent transaction, whether aware of the fraudulent intention or not, I do not think it makes any difference whether he is acting for himself, or for somebody else.

In *Duffin* v. *Smith*, Peake, 108, usury in a mortgage was

proved by the plaintiff's attorney, who prepared the deed, and who was called by the defendant to prove the consideration usurious. Lord Kenyon, in that case, said that "when the attorney himself is, as it were, a party to the original transaction, *that* does not come to his knowledge in the character of an attorney, and he is liable to be examined the same as any other person." Possibly this case, as stated in Peake, went too far, but it is by no means clear that it did.

Lord Chancellor Brougham, in *Greenough* v. *Gaskell*, 1 My. and Keen, 109, in which he reviews all the cases, commenting on this case, says: "It may be doubted if the attorney preparing the deed be not confidentially intrusted as an attorney in so doing. But Lord Kenyon proceeds upon the assumption that he is not; that on the contrary he is *quasi* party, and he seems to liken the case to that of a co-conspirator, where clearly there is no protection." Greenleaf refers to the case of *Duffin* v. *Smith* as one without the rule, and states the principle of the case as follows: "The attorney may be compelled to disclose * * * usury in a loan made by him as a broker as well as attorney to the lender." (1 Greenl. Ev., Sec. 445.) Thus stated, and on the assumption upon which Lord Kenyon proceeded, I have no doubt the principle is entirely correct. It was so held in *Dudley* v. *Beck et al.*, 3 Wis. R. 285, a case which appears to me to be directly in point.

In the case now in hand the witness was not merely the attorney to advise and prepare the deed, but he stepped outside the line of his professional character, and became a party to the conveyances—an actor in the transaction. And in the character of grantee and grantor—of party to the conveyances —he acquired his knowledge of the fact that there was no consideration paid. I cannot think a fact thus brought to the knowledge of the witness is within the rule or the principle of the rule. If so, the rule would afford great facilities for perpetrating and concealing frauds. It would only be necessary to find an attorney who is willing to do the double duty of advising as to the mode of proceeding, and then acting as the agent or instrument in the execution of the plans

devised, and all evidence of the transaction, except so far as the party himself could be compelled to disclose it, would be shielded from judicial inspection.

In my judgment it makes no difference, so far as the question under discussion is concerned, that Mastick had no knowledge himself of any fraudulent intent on the part of the Shindlers; his knowledge of the fact sought to be proved was still acquired by him in his capacity of party to the conveyances, and not in his professional character. And, in the language of Judge Story, "the person called as a witness must have learned the matter in question only as counsel, or attorney, or solicitor, and not in any other way" (Story's Eq. Pl. 601); or in that of Lord Brougham, "The privilege shall be excluded when the communication is not made or received professionally, and in the usual course of business." (1 My. and K. 115; see, also, *Gore v. Harris,* 8 Eng. L. and Eq. R. 149.)

In *Brown v. Martin,* 26 Cal. 88, this Court held that a defense founded upon the Statute of Limitations will not be entertained on demurrer unless the statute is specifically stated as a ground of demurrer in the demurrer filed. I dissented for reasons stated at the time, but the point was fully discussed in that case, and I shall henceforth regard the question of practice determined as settled in this State. Under the decision in *Brown v. Martin,* the record in this case does not present the point made on the Statute of Limitations, and for this reason it is unnecessary to express any opinion upon it.

Upon the other points determined in the leading opinion I concur.