### IN THE

## Supreme Court of the State of Oregon.

### July Term, A. D. 1862.

REUBEN P. BOISE, *Chief Justice.*
PAINE P. PRIM, ⎫ *Justices.*
WILLIAM W. PAGE, ⎭

J. G. WILSON, *Clerk.*

---

B. F. SMITH, Plaintiff in Error, *v.* D. C. INGLES, W. S. INGLES, B. R. INGLES, and HUGH BURNS, Defendants in Error.

*Error to Multnomah County.*

1. A judgment at law is not a lien upon an equitable title in land.
2. Such title cannot be sold under execution at law, while the legal title is clearly in another.

ON the 9th day of October, 1857, D. C. Ingles, being insolvent and largely indebted, purchased of one Perkins, lots 7 and 8 in block 25, in Portland, and caused them to be conveyed by deed to W. S. and B. R. Ingles, his sons, at that time minors. He paid part of the purchase money out of his own funds, and borrowed the balance—five hundred and fifty dollars—from one Davenport, to whom he executed a note, and mortgage on said lots; and afterwards, on the 24th of May, 1858, he borrowed eight hundred dollars of plaintiff, Smith, to pay said Davenport; and to secure that sum he executed to Smith a note, and mortgage on said lots, in the

names of W. S. and B. R. Ingles, fraudulently representing himself to Smith to be B. R. Ingles, and to be the agent of W. S. Ingles; and Smith knew nothing to the contrary until long afterwards. The mortgage purported to have been acknowledged by B. R. Ingles for himself, and as the agent of W. S. Ingles, and was recorded on the 25th of May, 1858.

It is admitted that D. C. Ingles was the real owner of these lots, and that he caused them to be conveyed to his sons for his own benefit, with intent to defraud his creditors and to prevent the lots from being sold for his debts.

Defendant Hugh Burns obtained a judgment at law against D. C. Ingles, on the 16th of October, 1857, for ninety-four dollars and twelve cents, and costs; and execution was duly issued thereon and levied on said lots, which were sold on sheriff's sale to Burns, for the sum of one hundred and thirty-eight dollars; and plaintiff filed his bill in chancery, to have the equitable title of D. C. Ingles subjected to the payment of his note and mortgage to plaintiff Smith.

*G. H. Williams, Esq.*, for plaintiff in error.

*E. D. Shattuck, Esq.*, for defendants in error.

PRIM, J.   The legal title to the lots in question was in W. S. and B. R. Ingles, who were minor sons of D. C. Ingles. The facts proven and admitted show that D. C. Ingles made the purchase, advanced the money, and caused the conveyance to be made to them for his own use and benefit, and with intent to place said property beyond the reach of his creditors.

The main question to be decided here is, whether the judgment at law of Burns against D. C. Ingles became a *lien* on these lots, while there was nothing of record to show that he had any interest in them whatever. In other words, is a judgment at law a lien on an equitable title in land, and can such a title be sold on an execution at law, while the legal title is clearly in another?   If so, Smith was without remedy; for Burns' judgment existed prior to his mortgage, and Burns

Smith *v.* Ingles.

has since reduced his lien, "if he had any," to an absolute ownership, by purchase under execution. The question seems plain enough. The *Statute, page* 119, *section* 62, · on this subject provides, in substance, "that a judgment shall be a lien on real property of the judgment debtor, not exempt from execution, owned by him in the county at the time of docketing the judgment," or that which he may afterwards require. The statute intended to make a judgment a lien on the *legal title* of real property, and not on some hidden equitable title, which could only be brought to light and made available by the extraordinary powers and proceedings of a court of equity. (*Roads* v. *Symmes,* 1 *Ohio,* 314.)

Then D. C. Ingles had no such title in these lots as a judgment at law could reach, consequently, Burns had no lien, and took nothing by his purchase, but stands on the same footing with other judgment creditors. His remedy was in equity and not at law.

Smith parted with his money in good faith on the credit of those lots. It was obtained and used to pay off the note and mortgage given for a part of the purchase money, and was obtained by the fraudulent acts and representations of D. C. Ingles, whom a court of equity, under all the circumstances, is bound to treat as the equitable owner of these lots.

Then we think that the court below was correct in arriving at the conclusion that this mortgage, although fraudulent and void, gave plaintiff such a lien on said lots as could be enforced in equity; and that whatever rights Burns had in the premises they were subject thereto.

Decree is affirmed.

NOTE.—As to the extent of the effect of the lien of a judgment see present Statute Code, page 211, section 279, reading thus: "All property, or right, or interest therein of the judgment debtor, shall be liable to execution" except statury exemptions. S. C. reported, 1869.