## Case No. 1,155.

### In re BEADLE.

[5 Sawy. 351.] [1]

District Court, D. California.   Jan. 4, 1879.

BANKRUPTCY—FRAUDULENT ASSIGNMENT—JUDG-MENT LIENS OF CREDITORS.

[1. An assignment in trust, by an insolvent, with power to sell within two years for the benefit of creditors who will accept 60 per cent. of their claims, with a reservation in favor of the grantor of all property remaining after such settlement, is void at common law and under the bankruptcy act, as having been made with intent to hinder, delay, and defraud creditors.]

2. Where an insolvent made an assignment to trustees, with intent to hinder and delay his creditors, which assignment was by this court subsequently adjudged void, and the trustees conveyed the property to the assignee in bankruptcy: *Held*, that the latter took the property subject to the liens of creditors who had recovered and docketed judgments subsequently to the fraudulent conveyance and before the commencement of the bankruptcy proceedings.

[Cited in Re Estes, 3 Fed. 138.]

In bankruptcy.

Sawyer & Bell, for Wright & Co.

E. B. & J. W. Mastic, for assignee.

HOFFMAN, District Judge. It appears from the register's report, and the admissions of counsel, that on the thirteenth day of October, 1874, [Donald] Beadle, being then insolvent as an individual, and as a member of the insolvent firm of A. Chalfant & Co., executed to certain parties a conveyance of his real estate in trust for those of his creditors who should consent to accept sixty per cent. of the amounts due them, in full of their demands, and on the further trust to reconvey to the grantor all the moneys and property remaining in their hands after the payment of the creditors as aforesaid. The trustees were allowed to sell at any time within two years, and on such terms and conditions as they should deem most to the advantage of the parties interested—the property in San Francisco to be sold last.

Beadle was adjudicated a bankrupt on the petition of his creditors on the nineteenth day of February, 1877. Before the filing of this petition, several creditors who had not assented to the deed of trust had sued the bankrupt, and obtained judgments which were duly docketed. A suit was subsequently brought by the assignee in bankruptcy against the trustees to set aside the deed of trust. The trustees interposed no defense; and in pursuance of the decree of this court, they conveyed to the assignee all their right, title and interest in the property deeded to them. This property was subsequently sold by the assignee free of all liens, under a stipulation that the liens, if any, held by the judgment-creditors should attach to the proceeds. The latter now pray that their judgments may be satisfied out of the fund in the order of their dates. The cause has been

very elaborately argued on in the briefs, but the questions presented are few and simple.

1. Was the deed of trust by the bankrupt a conveyance made with intent to hinder, delay and defraud creditors? Of this, there can be no doubt. It would not be easy to imagine a conveyance which would contain more of those features which the courts have always held to be indicia of fraud.

It was made by a person hopelessly insolvent. It embraced all his property. It was not for the equal benefit of all his creditors, but those of them who would consent to accept sixty per cent. of their demands in full satisfaction. It attempted to place the property beyond the reach of the creditors for two years, at the discretion of the trustees. And finally, it contained a reservation in favor of the grantor of whatever might remain after the payment of the sixty per cent. to those creditors who might agree to discharge the grantors.

No citation of authorities is necessary to show that this conveyance is in law conclusively deemed to have been made with intent to hinder, delay and defraud creditors, and is, therefore, void at common law, under the statute of Elizabeth, the civil code of this state, and United States bankruptcy act.

2. Could the judgment-creditors, by docketing their judgments against the grantor, acquire a lien on the land without previously bringing their bill in equity to set aside the fraudulent conveyance? This question must be determined by the law of this state; and it appears to have been settled ever since the case of Hager v. Shindler, 29 Cal. 47, that a conveyance of this description may be treated by the judgment-creditor as absolutely void ab initio, and as if non-existent. In that case it was held that the purchaser of land at a sheriff's sale may maintain a bill to set aside and annul as a cloud upon the title a deed of the land given before the judgment by the judgment-debtor without consideration and to defraud his creditors. This decision has been followed or approved in numerous subsequent cases, and it now stands as the established law of the state. 29 Cal. 190; 28 Cal. 649; 32 Cal. 263. Mr. Justice Sawyer in this last case observes: "As to the creditor the fraudulent conveyance was void. Notwithstanding this conveyance, therefore, so far as the rights of the creditor are concerned, the title never passed to the grantee until the sale under execution and the making of the sheriff's deed under which the plaintiff claims; until that time, as to the creditor, the title must be regarded as remaining in the debtor; and his grantee, who participated in the fraud, must be regarded as being in possession with the debtor's assent and not adversely to the creditor, his right being subject to being divested by a sale under execution against his grantor in favor of the creditor defrauded." It follows from this view of the law, as enunciated by the supreme court, that the judg-

---

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

ment-creditors by docketing their judgments acquired a lien upon the property fraudulently conveyed, "the title to it being regarded as to them as remaining in the debtor." The register was of opinion that upon the setting aside of the fraudulent conveyance by this court, the title passed to the assignee, precisely as it existed in the debtor at the date of the fraudulent conveyance. This would no doubt be the case if the conveyance had been valid under the state law (as in the case of an assignment under the state insolvent law for the equal benefit of all the creditors), and only voidable by the assignee in bankruptcy in case bankruptcy occurred within the prescribed period. But the conveyance in question was absolutely void under the state law, as we have seen. The title as against his creditors remained in the grantor. The creditors could seize and sell the property under execution, and the purchaser could bring his bill to set aside the fraudulent conveyance as a cloud upon his legal title. If such were their rights the property passed to the assignee, subject to the liens which had already attached to it under the state law, and those liens must be respected and enforced in this court.

It is urged that the statutory period to which liens of this nature are limited has elapsed, and that the liens are therefore gone. But it had not elapsed at the time of the commencement of the proceedings. The liens were then valid and subsisting; and both the terms of the act and the uniform course of the decisions under it show that the assignee takes the property of the bankrupt as of the date of the commencement of the proceedings, and subject to all then existing liens upon it. The rights of all parties are fixed, and must be determined as of that time. New liens cannot be acquired, nor can existing liens be lost by the running of the statute of limitations, or the expiration of any statutory period fixed for their enforcement.

The judgment-creditors are, therefore, in my opinion, entitled to be paid in preference to the general creditors, out of the proceeds of the property on which they acquired liens, and in the order of the dates on which their judgments were docketed.