## *In re* ESTES & CARTER.

*(District Court, D. Oregon.* June 12, 1880.)

1. FRAUDULENT CONVEYANCE—JUDGMENT—LIEN.—A judgment is not a
lien upon land previously conveyed in fraud of creditors, where the
operation of the lien is limited by statute to "all the real property of
defendant," "from the date of the docketing of the judgment."

2. BANKRUPTCY— PARTNERSHIP DEBTS—INDIVIDUAL DEBTS—REV. ST.
§§ 5075, 5121.—Under the Bankrupt Act, (Rev. St. §§ 5075, 5121,) the
property of a partnership is to be first applied to the payment of part-
nership debts, and the property of each member thereof to the pay-
ment of his individual debts.

In Bankruptcy. Petition to apply certain assets in pay-
ment of individual debts.

*Erasmus D. Shattuck,* for assignee.

*Charles H. Woodward* and *William W. Page,* for judgment
creditors.

DEADY, D. J. On July 19, 1877, Levi Estes and Charles
M. Carter were by this court adjudged bankrupts, both as
partners constituting the firm of "Estes & Carter," and as
individuals. On May 4, 1876, Estes was the owner of the
undivided one-half of lots 3 and 4, in block 39, in this city,
and being insolvent conveyed the same, subject to a mort-
gage thereon of ———, to William H. Cole, with intent to
hinder, delay and defraud his creditors. On December 22,
1879, the circuit court for this district, in a suit brought for
that purpose by the assignee of the bankrupts against said
Cole, gave a decree setting aside and annulling said convey-
ance as fraudulent. Afterwards, the assignee, upon the order
of this court, sold the property free from all liens, if any,
except that of the mortgage aforesaid, for the sum of $7,600.

Claims amounting in the aggregate to $19,498.19 have
been proved against the joint estate of the partners and the
individual estate of Estes—$7,540.06 unsecured, $836.15
arising upon judgments against the latter; and $6,760.16
unsecured, and $4,361.82 arising upon judgments against the
partnership. Besides these, claims amounting to $2,836.15,
but secured by mortgage upon other property, have been

proved against Estes. The judgments were all given and docketed after the conveyance to Cole. There are no assets of the partnership, but the assets of Estes' estate amount to $6,668.91—$6,000 of which will probably be applicable to the payment of debts.

The assignee, on behalf of certain individual creditors of Estes, filed a petition setting forth the fact of the conflicting claims upon this fund, and asked for an order directing it to be applied exclusively upon the individual debts of Estes, without regard to the supposed lien of any judgment.

The petition was referred to the register, when the judgment creditors of the partnership, George Ham, Smith Bros. & Co., H. L. Darr, A. Watts and John H. Moore, demurred to the same, upon the ground that on the facts stated the petitioners were not entitled to the relief asked, because the judgments of said creditors were a lien upon the individual property of Estes, which the fund in the hands of the assignee represents. By consent the register made a *pro forma* ruling upon the demurrers, and the matter was certified into court and here argued by counsel.

Counsel for the judgment creditors insist that the judgments given against Estes, whether jointly with Carter or alone, were a lien upon the property conveyed by the former to Cole, notwithstanding such conveyance, and the lien now exists against the proceeds thereof in the hands of the assignee.

The argument in support of this proposition assumes that, notwithstanding the previous conveyance to Cole, the property as to these judgment creditors at the date of the entry and docket of their judgments still *belonged* to Estes, and therefore it became and was subject to the lien of said judgments; and upon the correctness of this assumption the case turns.

On the other hand, counsel for the assignee contend that at the date of the judgments in question Estes, having already conveyed the premises to Cole by a deed valid and operative as between the parties thereto, had no interest in the premises; that they in no sense belonged to him, and

therefore the liens of said judgments could not affect or include them.

The Oregon Civil Code, § 266, provides that "from the date of the docketing of a judgment * * * such judgment shall be a lien upon *all the real property of the defendant* within the county or counties where the same is docketed, or which he may afterwards acquire therein, during the time an execution may issue thereon." By sections 273, 279, it is further provided that an execution against property may be levied upon "the real property belonging to him (the judgment debtor) on the day when the judgment was docketed in the county, or at any time thereafter;" and "all property or right or interest therein of the judgment debtor," not specially exempted, "shall be liable to an execution."

Section 51 of chapter 6, relating to conveyances, which is substantially a copy of chapter 5 of 13 Elizabeth, provides, among other things, that every conveyance of any estate in lands, "made with the intent to hinder, delay or defraud creditors of their lawful * * * demands, * * * as against the person so hindered, delayed or defrauded, shall be void." Gen. Laws, 523.

To show that a judgment is a lien upon land previously conveyed in fraud of creditors counsel cite Bump on Fraud. Con. 465; *Pratt* v. *Wheeler*, 6 Gray, 520–522; *Scully* v. *Kearns*, 14 La. An. 439; *Eastman* v. *Schettler*, 13 Wis. 362; *Jacoby's Appeal*, 67 Pa. 434; *Manhattan Co.* v. *Evertson*, 6 Paige, c. 465; *Smith* v. *Ingles*, 2 Or. 43.

In *Pratt* v. *Wheeler, supra,* the point in controversy was not decided. That case only determines that a deed in fraud of creditors is void as against the attachment of any of such creditors. The deed being void as to creditors, it is merely a question of procedure whether a creditor shall attack it in equity by a bill to set it aside or by process at law, as an attachment or execution against the property covered by it. In Massachusetts, the courts did not possess equity jurisdiction until a late date, and the proceeding by attachment or execution to assert the right of a creditor against the property of a debtor, covered by a fraudulent conveyance, became

and is common. But whether the mere lien of a judgment which results from the docketing of the same can be used or have the effect of process, by means of which a creditor can assert his right against a fraudulent conveyance, is another and very different question.

All this and more may be said of the case of *Scully* v. *Kearns, supra.* This was a case of a "simulated" or sham sale of personal property in fraud of creditors, and the court only held that the judgment creditor of the pretended vendor was not bound to proceed specially to have the sale set aside, but might treat it as so far void and levy upon the property as that of the judgment debtor.

*Eastman* v. *Schettler, supra,* does not contain a *dictum* to the effect that a judgment obtained against a debtor who has already conveyed his property in fraud of his creditors is, notwithstanding such conveyance, a lien thereon; but the only point *decided* in the case was that the purchaser of such property at a sale upon such judgment succeeded to the right of the judgment creditor, and might therefore assail such conveyance in the same manner as such creditor.

In *Jacoby's Appeal, supra,* there was a contest between two judgment creditors for the proceeds of property sold upon the process of the junior of them, the same having been conveyed prior to the judgments by the judgment debtor in fraud of his creditors. The court, upon the authority of *Hoffman's Appeal,* 8 Wright, 95, in which it was said that it was "the estate of the debtor which was sold at the sheriff's sale, and therefore the liens upon it which attached after the fraudulent grant must be paid in their order," gave the proceeds to the prior judgment creditor.

In *Manhattan Co.* v. *Evertson, supra,* it was held that as between the mortgagee in a mortgage to secure a previous debt, executed by the grantee in a fraudulent conveyance, and the judgment creditors of the grantor in such conveyance, the lien of the latter should prevail. The citation from Bump on Fraud. Con. is fully to the effect that in such cases, in contemplation of law, the title remains in the debtor, and that judgments against him become liens upon such property

precisely as if no transfer had been made. But this statement of the law is based, among others, upon the foregoing cases, and it is clear that with the exception of the last two they do not support the text. In addition to these authorities I find that Judge Hoffman, *In re Beadle*, 5 Saw. 351, has held in favor of the lien under circumstances similar to those in this case. The syllabus of the case states the facts and the ruling sufficiently. It is: "Where an insolvent made an assignment to trustees, with intent to hinder and delay his creditors, which assignment was by this court subsequently adjudged void, and trustees conveyed the property to the assignee in bankruptcy, *held*, that the latter took the property subject to the liens of creditors who had recovered and docketed judgments subsequently to the fraudulent conveyance and before the commencement of the bankruptcy proceedings." In the course of the opinion of the court this question is asked: "Could the judgment creditors, by docketing their judgments against the grantor, acquire a lien on the land without previously bringing their bill in equity to set aside the fraudulent conveyance?" and the answer given is: "The question must be settled by the law of this state; and it appears to have been settled, ever since the case of *Hager* v. *Shindler*, 29 Cal. 47, that a conveyance of this description may be treated by the judgment creditor as absolutely void, *ab initio*, and as if non-existent." But it does not appear that any question concerning the operation or effect of the *lien* of a judgment arose or was decided in *Hager* v. *Shindler*. That was a case where the purchaser of real property at a sheriff's sale, upon an execution to enforce a judgment against one who had, prior to the judgment, conveyed the premises in question in fraud of his creditors, brought a suit to annul such conveyance as a cloud upon his title, and the court held that the suit could be maintained. Nothing was claimed under or by virtue of the lien of the judgment. Indeed, the statement of the ruling in *Hager* v. *Shindler* by the court *In re Beadle* shows this. It is: "In that case it was held that the purchaser of land at a sheriff's sale may maintain a bill to set aside and annul, as a cloud upon the title, a deed of the

land given before the judgment by the judgment debtor without consideration and to defraud creditors."

And the subsequent cases of *Ferris* v. *Irving*, 28 Cal. 645–646, and *Stewart* v. *Thompson*, 32 Cal. 260–263, referred to by the court, and particularly the concurring opinion of Judge Sawyer in the latter case, are only to the same effect—that the conveyance is void as to the creditor who may attack it and divest the grantee of his right under it by a sale upon an execution against the grantor in favor of such creditor. To justify this conclusion it was not necessary that there should be any judgment lien in the case, or even that the judgment should ever have been docketed. The seizure and sale upon the execution was a direct and legal assertion of the creditor's right to treat the conveyance as void, and the conveyance by the sheriff to the purchaser invested the latter with the title to the premises; and these California cases only decide that the purchaser, as such, and as the successor in right of the judgment creditor, could maintain a suit to set aside the fraudulent conveyance as a cloud upon this title without first bringing ejectment for the possession.

On the other hand, in *Miller* v. *Sherry*, 2 Wall. 237–248, which was a controversy concerning the title to real property between parties claiming under two judgments given against the debtor, after he had conveyed the premises in fraud of his creditors, and the subsequent proceedings in equity to subject the premises to the satisfaction of said judgments, the court held that the proceedings in equity on the part of the senior judgment creditor were insufficient to affect the title, and decided in favor of the party claiming under the proceedings on creditors' bill of the junior judgment creditor.

In delivering the opinion of the court Mr. Justice Swayne says that after the conveyance the legal title was in the grantee thereof until divested by the decree on the creditors' bill; and, as if it was too plain for argument, assumes and states that the judgments were not a lien upon the premises. Speaking of the senior judgment he says: "It is not contended that the judgment was a lien on the premises. The legal title having passed from the judgment debtor before its rendi-

tion, by a deed valid as between him and his grantee, it could not have that effect by operation of law."

In *Rappleye* v. *International Bank*, N. W. Rep. (1 Ill. Sup.) 68, a trust deed made to defraud creditors was avoided at the suit of the defendant, which thereupon claimed and obtained a priority in the payment of its judgment from the proceeds of the land thus conveyed by the debtor. The court held, in the language of the syllabus, that "a conveyance, fraudulent as to creditors, is binding on the grantor, so that there is no estate, legal or equitable, remaining in him on which a judgment lien could attach. The lien only attaches on the avoiding of the deed by the creditor, so that he who thus avoids the deed has the prior lien."

In *Smith* v. *Ingles*, 2 Or. 43–44, it was held that the lien of a judgment does not extend to an equity or an equitable title. The case was this: Ingles purchased real property, and for the purpose of defrauding his creditors took the conveyance to his minor children. Burns, a judgment creditor of Ingles, sold the property upon an execution, as the property of the latter, and became the purchaser thereof. Subsequent to the entry and docketing of this judgment Ingles mortgaged the premises to Smith, and after the sale Smith brought suit to enforce the lien of his mortgage, making Burns a party. The court held that the lien of Burns' judgment did not affect the property. As the law of the state is the law of this case, it is claimed that the ruling in *Smith* v. *Ingles* is the decision of this question in favor of the assignee. The case is not clear in some points, but upon authority the transaction was not a conveyance by the debtor in fraud of his creditors within the statute, and therefore void, but a purchase by Ingles in the name of others with a fraudulent intent. This being so, as to the creditors, equity would hold the grantees in the conveyance to be the trustees of a resulting trust in favor of Ingles, and subject the trust estate to the payment of his debts. Bump on Fraud. Con. 237; *Guthrie* v. *Gardner*, 19 Wend. 414–415. In this view of the matter the case is scarcely in point. The legal estate was never in Ingles, and the case only decides that the lien of the judgment against him did not affect

his resulting trust or equity in the premises. But, in the case under consideration, Estes, at the date of docketing these judgments, had the legal estate in the premises or nothing. In the language of the court in *Rappleye* v. *International Bank, supra*: "It is a mistaken notion that after the making of a fraudulent conveyance as to creditors there remains in the fraudulent grantor an equitable estate in the land conveyed. If this were so, he could sell and convey to another such estate."

It is also claimed that the statute limiting the lien of a judgment in *Smith* v. *Ingles* was more restricted than the present. But I think they are substantially the same. The former (Gen. Laws 1853–4, p. 100) declared that "such lien shall extend to all the real property of the judgment debtor *owned by him* at the time of docketing the judgment," etc. From the present one there is only omitted the tautology "owned by him,"—the expression "property *of* the judgment debtor" being considered the full equivalent thereof.

So stand the authorities *pro* and *con* upon this subject. Of those which are controlling in this court, the one from the supreme court of this state—*Smith* v. *Ingles*—decides that the lien of a judgment does not extend to an equity; while the other one from the supreme court of the United States—*Miller* v. *Sherry*—decides that such lien does not attach at all in the case of a previous conveyance in fraud of creditors.

In my own opinion, the lien of a judgment which is limited by law *to the property of or belonging to the judgment debtor* at the time of the docketing does not nor cannot, without doing violence to this language, be held to extend to property previously conveyed by the debtor to another, by deed valid and binding between the parties.

A conveyance in fraud of creditors, although declared by the statute to be void as to them, is nevertheless valid as between the parties and their representatives, and passes all the estate of the grantor to the grantee; and a *bona fide* purchaser from such grantee takes such estate, even against the creditors of the fraudulent grantor, purged of the anterior fraud that affected the title. Oregon Gen. Laws, 523; *Bean*

v. Smith, 2 Mason, 252–272; Rappleye v. International Bank, supra. Such a conveyance is not, as has been sometimes supposed, "utterly void," but is only so in a qualified sense. Practically, it is only voidable, and that at the instance of creditors proceeding in the mode prescribed by law, and even then not as against a bona fide purchaser. Bean v. Smith, supra, 252–274; Wood v. Mann, 1 Sum. 506–509; Bump. on Fraud. Con. 451.

The operation of the lien of a judgment being limited by statute to the property then belonging to the judgment debtor, is not a mode prescribed by which a creditor may attack a conveyance fraudulent as to himself, or assert any right as such against the grantor therein. This lien is constructive in its character, and is not the result of a levy or any other act directed against this specific property. It is the creature of the statute and cannot have effect beyond it. In re Boyd, 4 Saw. 262–270. By that, its operation and effect are restrained to the property then owned by the debtor. But the conveyance from Estes to Cole deprived the former of all interest in this property. No judgment against Estes nor any act of his could reach it or affect it. Therefore, when the judgments of these joint creditors were obtained and docketed the property did not belong to him, and was not for that reason within the operation of their liens. On the contrary, it belonged to Cole, qualified by the right of the creditors, in the manner and time prescribed by law, to subject it to the payment of their debts. In the suit against Cole to set aside this fraudulent conveyance the assignee represented the creditors. Bradshaw v. Klein, 2 Bliss, 20.

It is also claimed by the assignee that the fund obtained by that suit—the proceeds arising from the sale of the property—is equitable assets and should be distributed equally among the creditors; citing Silk v. Prime, and notes, 2 Lead. Cas. Eq. 82; Benson v. LeRoy, 4 John. Ch. 650–651. But this distribution was subject to any specific, legal lien on priority that might exist in favor of any creditor. Purdy v. Doyle, 1 Paige, 558; Codwise v. Gelston, 10 John. 507–522. In this last case Chancellor Kent says: "If a fund for the payment of

debts be created under an order or decree in chancery, and the creditors come in to avail themselves of it, the rule of equity then is that they shall be paid in *pari passu*, or upon a footing of equality. But, when the law gives priority, equity will not destroy it; and especially where legal assets are .created by statute they remain so though the creditors be obliged to go into equity for assistance." But it is not necessary to invoke the doctrine of equity in this case, as the bankrupt act preserves all legal liens, and furnishes a certain and just rule for the distribution of the assets of a partnership and the members thereof. Sections 5075, 5121, Rev. St. By this rule the property of the partnership is to be first applied to the payment of partnership debts, and the property of each member thereof to the payment of his individual debts.

Whether the proper application of this rule would exclude the lien of a judgment obtained against the members of the firm for a partnership debt from the property of the individual partner, as contended by counsel for the assignee, it is not necessary now to consider.

Having arrived at the conclusion that none of the judgments in this case were a lien upon the property in question, the proceeds of the sale are individual assets, and under the bankrupt act must be first applied to the payment of Estes' individual debts; and it is so ordered.