## HICKOX v. ELLIOTT and others.

*(Circuit Court, D. Oregon.* November 12, 1884.)

1. LIMITATIONS.

A suit in equity may be maintained to enforce a security for a debt, although an action against the debtor directly upon the indebtedness is barred by lapse of time: and for such purpose the debt exists, notwithstanding the lapse of time.

2. SUIT TO SET ASIDE A CONVEYANCE.

A suit in equity to set aside an assignment or conveyance of property made to hinder or delay creditors, should ordinarily be brought within the same time after the right accrues as an action at law to recover possession of the same property.

3. PARTIES TO A SUIT.

Where a trustee sues to recover possession of the trust property for the benefit of the *cestui que trust* merely, or simply to enforce his right thereto against third persons, such *cestui que trust* is not a necessary party thereto; and in a suit to set aside an assignment or conveyance made to hinder or delay creditors, the grantor or assignor therein, if he has parted with all his right in the property, is not a necessary party either.

4. EQUITABLE ASSIGNMENT—MAINTENANCE.

E. being a member of a railway construction firm in Oregon, and defendant in a suit brought there by his partners to dissolve said firm and determine the rights of the parties therein, applied in California to W., a citizen of that state, for a loan of money to aid him in asserting his rights in said suit, which W. agreed to and did advance on E.'s promise to repay the same, with interest, and his assignment to H., in trust for W., of all his interest in said firm, as a security for the repayment of said money and interest, in which suit there was afterwards a decree given in favor of E. and against his partners for a sum of money; and at the time of making such assignment E. also gave W. the option to take a portion of any railway property or bonds that he might obtain in such suit, in lieu of said money and interest. *Held,* (1) that the assignment of E.'s interest in the firm embraced the decree in his favor for the sum of money which represented and stood for such interest, and that the trustee therein became in equity the assignee of said decree as soon as it came into existence, and might maintain a suit to set aside specific covinous assignments and conveyances by the defendant therein, made with intent to hinder and delay the collection of the same; (2) the option given W. is not involved in the suit to enforce the decree, and therefore it is immaterial whether it is void for champerty or not; (3) the contract for the loan and repayment of the money was made and to be fulfilled in California, and therefore valid, whether champertous or not, by the law of Oregon; and the fact that security was taken on property in Oregon for the performance of the contract, does not change its character in this respect.

Suit to Set Aside Conveyances to Hinder and Delay Creditors.

*James K. Kelly* and *C. E. S. Wood,* for plaintiff.

*Thomas N. Strong,* for Joseph Holladay.

*W. H. Holmes,* for S. G. Elliott.

*C. J. Macdougall,* for Ben Holladay.

DEADY, J. This suit is brought by George C. Hickox, a citizen of California, against Simon G. Elliott, Ben Holladay, Joseph Holladay, and William H. Effinger, citizens of Oregon, to subject certain property, the legal title of which is now in Joseph Holladay, to the payment of a certain decree heretofore given by the supreme court of Oregon against Ben Holladay, on the ground that said property was

assigned, transferred, and conveyed to the former by the latter to hinder and delay his creditors, and that the plaintiff is the assignee of said decree in trust for Martin White, a creditor of said Elliott. The defendants demur to the bill separately, and assign numerous and different causes of demurrer, that on the argument were resolved or condensed into these: (1) The non-joinder of necessary parties, plaintiff and defendant; (2) the contract on which the plaintiff seeks to recover is void for champerty; and (3) the plaintiff has been guilty of laches. The facts stated in the bill are substantially these:

On September 12, 1868, Elliott formed a partnership with Ben Holladay and one C. Temple Emmet, by the name of "Ben Holladay & Co.," for the purpose of constructing and operating railways in Oregon, and thereafter the said partnership was engaged in the construction of the Oregon Central Railway Company, until November 5, 1869, when Holladay and Emmet commenced a suit against Elliott in the circuit court for Multnomah county to dissolve said partnership and settle the accounts thereof, which suit was afterwards transferred to the circuit court for the county of Marion, in which court, on September 28, 1877, a decree was entered dissolving said partnership, and adjudging Elliott to be indebted to the other members of the partnership in the sum of $470, from which decree Elliott took an appeal to the supreme court of the state, wherein, on August 15, 1879, a decree was given dissolving said partnership, and providing that Elliott recover from Holladay the sum of $21,919.46, and from Emmet the sum of $8,596, with his costs and disbursements in that court, no part of which sums have been paid to Elliott, and there is now due on said decree from Ben Holladay said sum of $21,919.46, with legal interest from August 15, 1879.

On February 10, 1874, Elliott, being unable to meet the expense of this litigation with his partners, applied to Martin White, then and now a citizen of California, for a loan of $12,000, "to enable him to defend said suit, and for other purposes," and offered to secure the payment of the same by an assignment "of all his right, title, and interest" in said suit to the plaintiff, in trust for said White, whereupon the following contract was duly made and signed by the parties thereto:

"Memorandum of agreement between S. G. Elliott and Martin White, made the tenth day of February, 1874.

"A controversy exists between S. G. Elliott and Ben Holladay, and others, relating to the right of said Elliott in and to the Oregon Central Railroad Company, and its stock, bonds, franchises, and other property, which controversy involves substantially all the property and rights of the said company; and, among other things, at least three million two hundred thousand (3,200,000) dollars of the bonds of said company.

"For the purpose of asserting and maintaining his rights in said controversy, said Elliott has borrowed from Martin White the sum of twelve thousand (12,000) dollars in gold coin of the United States, and has agreed to repay the same within one year from the date of the last installment thereof, as

hereinafter provided, (and within two years from the date hereof, whe⊦er the last installment shall be demanded by said Elliott within one year from the date hereof or not,) with interest on each installment from the date of the advance thereof at the rate of ten (10) per cent. per annum.

"And in consideration of the loan of said sum by said White upon the terms herein stated, said Elliott has granted to said White the option, to be exercised within the period hereinafter limited, to take in lieu of the repayment of the sum loaned as aforesaid, free from all deductions or charges of any kind for any purpose, one-half of all the property aforesaid, of or pertaining to said railroad company, (except the bonds thereof,) that shall be recovered by said Elliott, and of the bonds of said company that shall be so recovered, after deducting one million dollars thereof for his (said Elliott's) use, and not exceeding one hundred thousand dollars thereof for R. P. & Jabish Clement, in payment for legal services; said option to continue until sixty (60) days after said Elliott shall have received possession of said property and notified White thereof; and if money or other property should be received in place of the property and bonds aforesaid, said option to exist and continue as to such money and property; the dividend thereof to be made in the proportions aforesaid, according to actual value.

"And to secure the performance of this agreement on his part, and to secure the payment of any additional advances not exceeding thirteen thousand (13,000) dollars that he may obtain from said White or other parties, said Elliott has assigned and conveyed in trust to Geo. C. Hickox all his right, title, interest, and claim in and to the property aforesaid.

"And in consideration of the agreement and acts of said Elliott, said White has agreed to loan to said Elliott said sum of twelve thousand (12,000) dollars in gold coin of the United States, and to advance the same upon his demand in installments from time to time, as the same shall be required, upon the terms aforesaid.

"Signed in duplicate, at San Francisco, California, this tenth day of February, 1874.

[Signed]
             "S. G. ELLIOTT.
             "MARTIN WHITE."

And in pursuance of said agreement, Elliott executed and delivered to the plaintiff the following sale and assignment, namely:

"In consideration of the sum of twelve thousand dollars in gold coin of the United States, to me paid, and other valuable considerations, I, S. G. Elliott, of the commonwealth of Massachusetts, have granted, bargained, sold, and assigned, and by these presents do grant, bargain, sell, and assign, unto George C. Hickox, of the city and county of San Francisco, state of California, all my right, title, interest, and claim, both in law and equity, in and upon the stock, property, and assets of the Oregon Central Railroad Company of Salem, Oregon, and the Oregon & California Railroad Company, of Portland, Oregon, the firm of A. J. Cook & Co., and the firm of Ben Holladay & Co.

"In witness whereof, I have hereunto set my hand and seal this thirteenth day of February, 1874.

[Signed]
             "S. G. ELLIOTT. [Seal.]
"Witnesses: MARTIN WHITE, R. P. CLEMENT."

Between this date and March 25, 1879, White, in pursuance of this agreement, and upon the security of this sale and assignment, advanced to Elliott, and others for him, including $2,000 paid to the defendant Effinger, the sum of $22,589.65, no part of which has been repaid.

The defendant Effinger was the attorney for Elliott in the litigation with Holladay and Emmet, and claims a lien on the decrees given by the supreme court. against them for his compensation as such attorney, and the plaintiff admits that he is "entitled to some compensation" for his services, but how much he does not know, and therefore he makes him a party defendant.

During the pendency of this litigation Ben Holladay was indebted to sundry persons, including Joseph Holladay, and in October, 1871, he gave the latter, on account of said indebtedness, his note for $100,-000, with interest at the rate of 1 per centum per month; and in November, 1876, gave a second note in discharge of the first one for the sum of $160,000, with interest at a like rate, and,.to secure the payment of the same, transferred and conveyed to Joseph Holladay, at divers times between said last-mentioned date and the date of said decree against him, all the real and personal property owned by him in Oregon, consisting of lands, stocks, notes, bonds, mortgages, and other personal property, then worth $225,000 and now worth $500,-000. Portions of this property were in the name of and held by third persons as the naked trustees of Ben Holladay, and the transfers and conveyances thereof to Joseph Holladay were made by them on the direction of the former, of which the latter had knowledge.

The bill also alleges that Ben Holladay has had no property in his own name, since the date of said decree, out of which the same could be satisfied by legal process, and is now insolvent and unable to pay the same, except out of the property aforesaid; that the transfers and conveyances aforesaid were made and directed by Ben Holladay and received by Joseph Holladay with the understanding and agreement between them that the same were taken and received by the latter partly as a security for the payment of said last-mentioned note, and also "that said property was to be held in the name of Joseph Holladay, so that the same could not be attached, levied upon, or taken by the other creditors" of Ben Holladay, of whom Elliott was one; that the said transfers and conveyances were made by the latter "with intent to hinder and delay the said Elliott and other creditors of the said Ben Holladay in the collection of their lawful debts and demands;" that at the date of said transfers and agreements it was understood and agreed between Ben Holladay and Joseph Holladay that the former should receive a large portion of the profits of said property, while the remainder should be retained by the latter on account of said note; and that, in pursuance thereof, he did, from time to time, send and deliver to Ben Holladay large sums of money, the profits of said property,—all of which is contrary to equity and good conscience, and in contravention of the plaintiff's rights in the premises.

The objection of laches is not made by Elliott's demurrer, and the ground on which it is made by the other defendants is not distinctly indicated. But has the plaintiff been guilty of laches or un-

reasonable delay in enforcing his right or claim? The suit was commenced on April 26, 1884. The money, for which the decree in *Holladay* v. *Elliott* is claimed to be a security, was advanced to Elliott by White at intervals of less than a year, and in almost every month of each year, except the year of 1878, from June 13, 1874, to March 25, 1879. It was advanced, not on account, but on an agreement to do so, from time to time, as Elliott might demand or require it, and but for the provision in the agreement as to the time of payment, the right of action against Elliott to recover the same, or any portion thereof, would not have accrued to White until the whole amount was delivered or advanced or offered and declined. But the agreement for the advance or loan provides that the first $12,000 shall be repaid within one year from the advance of the last installment thereof, which was made before September, 1874, and therefore the right of action to recover this sum accrued by September, 1875, and was barred in six years thereafter, and before the commencement of this suit. Or. Code Civil Proc. § 6, sub. 1. The delivery of the remaining $10,589.65 was completed on March 25, 1879. and without any contract as to when it should be repaid, and therefore it became payable at once; but even then the right of action to recover the same occurred within six years before the commencement of this suit. Upon this state of the case White could, at the commencement of this suit, have maintained an action against Elliott to recover this second sum, but not the first one.

But it is immaterial whether an action could now be maintained by White against Elliott to recover this money or not. This is not such an action, but a suit brought by a person claiming to be the assignee of a decree to subject the property of the debtor therein to its payment and satisfaction. And it can be maintained, although the right of action against Elliott to recover the money in question is barred by lapse of time. The statute bars the remedy against Elliott in six years, but does not destroy the debt, and it still exists for the purpose of enforcing any lien or pledge given to secure its payment. *Quantock* v. *England*, 5 Burr. 2628; *Sparks* v. *Pico*, 1 McAll. 497; *Myer* v. *Beal*, 5 Or. 130; *Goodwin* v. *Morris*, 9 Or. 322; 2 Pars. Cont. 379; Rap. & Law. Dig. "Limitations."

Assuming, then, for the present that the plaintiff is the assignee of the decree against Ben Holladay, and that the latter has no property in this jurisdiction subject to execution, except that which he has conveyed or disposed of to Joseph Holladay with intent to hinder and delay the enforcement of said decree, the plaintiff has a clear right to maintain this suit to set aside said conveyance or disposition so far as it is an obstacle in the way of such enforcement, unless he has delayed the commencement of the same unreasonably. 3 Pom. Eq. Jur. § 1415; Wait, Fraud. Conv. § 60.

The only questions that Elliott can litigate in this case are his indebtedness to White and the assignment to the plaintiff, both of which

are confessed by his demurrer, subject to the objection that they are void for champerty. The indebtedness of Ben Holladay to the owner of the decree against him is also admitted, and the only other question open to contest in the case is the validity of the transfers and conveyances to Joseph Holladay, and the extent of Effinger's claim for compensation as an attorney; and the objection of laches can only be made by said Holladay. As was said by this court in *Manning* v. *Hayden*, 5 Sawy. 379: "In the consideration of purely equitable rights and titles, courts of equity act in analogy to the statute of limitations, but are not bound by it;" and in *Hall* v. *Russell*, 3 Sawy. 515: "When an action upon a legal title to land would be barred by the statute, courts of equity will apply a like limitation to suits founded upon equitable rights to the same property." As has been said, so far as Joseph Holladay is concerned, this is a suit to set aside certain transfers and conveyances to him by Ben Holladay, so far as may be necessary to satisfy the decree against him, on the ground that they were made with intent to hinder and delay the plaintiff in the enforcement of the same, contrary to the statute of frauds, (Or. Laws, 528, § 51; 13 Eliz. *c.* 5;) and upon the question of time is analogous to an action to recover the possession of the property, and ought ordinarily to be considered as barred within the same time as such action. An action to recover the possession of real property is not barred in this state until 10 years from the time the right to maintain it accrues, (Sess. Laws 1878, p. 22;) and an action to recover the possession of personal property, or damages for the taking or detention thereof, may be brought within six years from the time the cause of action accrues.

The decree in question was obtained on August 15, 1879, and if the right to maintain this suit accrued then, as I think it did, the plaintiff has not been guilty of laches. Following the analogies of the statute as applied to actions at law, the suit was commenced in time, both as to the real and personal property affected by the alleged invalid disposition to Joseph Holladay.

The assignment by Elliott, among other things, of all his right, title, interest, and claim, both in law and in equity, in the firm of Een Holladay & Co., was valid and operative, and transferred to the plaintiff all his interest in said firm. 1 Pom. Eq. Jur. § 168; Burr. Assignm. § 100. It also gave him the option to make himself a party to the litigation then pending between Elliott and his partners in said firm, to ascertain and determine their respective interests therein and liabilities thereto, or to allow it to proceed in the name of the assignor for his benefit. *Ex parte Railroad Co.* 95 U. S. 226.

But counsel for Joseph Holladay insists that this "secret assignment was a fraud upon the courts," and ought not, therefore, to be upheld. But this assertion is certainly unfounded in both law and fact. The contention with Holladay and Emmett, whether conducted in the name of Elliott or Hickox, turned, so far as the former was

concerned, upon his right and liabilities, and it could make no difference in the opinion or action of the court whether Elliott or his assignee had the ultimate benefit of its decree. Nor was the proceeding in violation of that provision of section 27 of the Code of Civil Procedure, which declares that "every action shall be *prosecuted* in the name of the real party in interest." In my judgment the term "prosecuted" is used in this section in the sense of "commenced," and does not prevent a party from assigning his interest in the subject-matter of an action after it has been duly commenced, or require that the assignee shall make himself a party thereto, or dismiss the same and commence another action in his own name. And so the provision appears to have been construed in *Garrigue* v. *Loescher*, 3 Bosw. 578, cited in Wait's Annotated Code, 115. But, if a suit is even brought in the name of a party after he has assigned his interest in the subject-matter, the objection is waived unless made by answer. Whether an action is brought in the name of the assignor or assignee is a mere matter of form and convenience, and does not touch the merits of the controversy. The statute is enabling rather than restrictive, and is intended to authorize an assignee of a chose in action to sue in his own name rather than to compel him to. Besides, Elliott was not a plaintiff in the suit with his partners, and did not commence or prosecute it, although it may be inferred, from the fact that a decree was given in his favor, that by a cross-bill, or otherwise, he sought and obtained relief therein.

Elliott's interest in the firm of Ben Holladay & Co. having been duly assigned to the plaintiff, pending the suit in the state court to dissolve the same and ascertain the interests of the several partners therein, thereafter the same was maintained and conducted, so far as Elliott was or is concerned, in his name, for the benefit of his assignee, according to the terms and purpose of the assignment. And the decree obtained therein, in the name of Elliott, is considered in equity as a decree in favor of Hickox, his assignee. The thing assigned was Elliott's interest in the partnership,—a matter yet unknown, and to be ascertained in the pending suit thereabout; and the subsequent decree therein represented and stood for that interest, and passed by the assignment to Hickox as soon as it was made or came into existence. *Field* v. *Mayor*, etc., 6 N. Y. 179; *Williams* v. *Ingersoll*, 89 N. Y. 508; *Wright* v. *Parks*, 10 Iowa, 342; 1 Pom. Eq. Jur. § 168; Story, Eq. Jur. § 1040.

Another ground of the demurrer is that there is a defect of parties. And, first, it is claimed that Martin White, the *cestui que trust*, ought to have been joined in the bill with the trustee as plaintiff. It is admitted that the general rule is that, in a suit respecting trust property, brought either by or against the trustee, the *cestui que trust* or beneficiary is a necessary party. Story, Eq. Pl. § 207. But to this rule there are exceptions, and this case falls within one of them. When the suit by the trustee is merely to recover or to reduce to possession the trust

property, and is in nowise intended to control the administration or disposition of it, or to affect the right or relation of the *cestui que trust*, the latter is not a necessary party. Story, Eq. Pl. § 212; *Carey* v. *Brown*, 92 U. S. 172.

In this case the trustee merely seeks to obtain the trust fund—the money due on the decree against Ben Holladay—for the use of White, the *cestui que trust*, according to the purport and effect of the trust.

It is also insisted that the several persons, to-wit, Thomas Brown, W. H. Hampton, George W. Weilder, W. L. Halsey, Ben Holladay, Jr., L. R. Patton, and the Oregon Real Estate Company, who held the legal title to much of this property when it was transferred or conveyed to Joseph Holladay, are necessary parties defendant to the suit. These parties were the mere agents and employes of Ben Holladay, and held this property in trust for him as a matter of convenience, and absolutely subject to his direction. They were naked trustees without interest or discretion.

And, *first*, this is not a purely creditors' bill, in which the plaintiff seeks to discover, and subject to the payment of his debt, equitable assets in the hands of the debtor, or property which he has transferred to others, under such circumstances as to leave an equitable interest in himself; but it is a suit to set aside specific covinous transfers and conveyances made by the debtor, which obstruct and prevent the plaintiff from enforcing his decree against the former by execution levied on the property included in such transfers or conveyances. So far as Ben Holladay is concerned, his indebtedness to the assignor of the plaintiff is established by the decree, and is no longer open to controversy; and the transfers and conveyances in question are good against him, and can only be avoided at the suit of a creditor. He has, then, no interest in this controversy. His indebtedness is fixed, and the property sought to be affected has passed beyond his control, and he cannot be prejudiced, in any legal sense, by a decree which may subject it to the payment of his debts. *In re Estes*, 6 Sawy. 459; *Collinson* v. *Jackson*, 8 Sawy. 365; Bump, Fraud. Conv. 548; Wait, Fraud. Conv. §§ 129, 171; *Fox* v. *Moyer*, 54 N. Y. 128.

It follows that while Ben Holladay is a proper party to this suit, he is not a necessary one, and might have been omitted from the bill. And his agents and trustees, who conveyed this property to Joseph Holladay under his direction, have less interest in the suit, or the subject-matter of it, if possible, than he has. As against them, also, the conveyances are good. They passed the legal title to Joseph Holladay. These parties have no longer any interest in the property or power over it. No relief is sought against them, and they cannot be prejudiced by any decree that may be given in the suit. The case of *Gaylords* v. *Kelshaw*, 1 Wall. 81, cited by counsel for Joseph Holladay, decides nothing to the contrary of this. Kelshaw, being the debtor and grantor in the alleged fraudulent conveyance, was a proper, although not a necessary, party in that case. But, being made a

party defendant, without any averment as to his citizenship, it did not appear that the court had jurisdiction. Accordingly, the case was remanded, with leave to the plaintiffs to amend their bill generally, which they might do by alleging the citizenship of Kelshaw, if it was sufficient to give the court jurisdiction, or by omitting his name from the bill. The general rule is that no person need be made a party to a suit who has no interest in it, and against whom nothing is demanded. Story, Eq. Pl. §§ 153, 228–231; *Kerr* v. *Watts*, 6 Wheat. 550; *Trecothick* v. *Austin*, 4 Mason, 44; Bump Fraud. Conv. 548. This proposition is tacitly admitted by the counsel for Joseph Holladay, but he contends that the transfers and conveyances in question were, in fact, only mortgages, and therefore the legal title to the property is still in these trustees, and they are necessary parties to any suit in which that title is sought to be affected or the legal estate disposed of. But, whatever the real fact may be as to the relations between Ben and Joseph Holladay concerning this property, there is nothing in the fact stated in the bill to warrant any such conclusion. On the contrary, the case made by the bill is one where a debtor transfers and conveys to one creditor his property with intent to thereby "hinder and delay" his other creditors, including the plaintiff. True, it is not alleged that these transfers and conveyances were made with intent to defraud. Neither is it necessary to the plaintiff's rights to the relief demanded that they should be. Under the statute, it is sufficient if the conveyance is made with intent, either "to hinder, delay, or defraud" creditors. These words are not synonymous, and a conveyance made with either intent may be avoided by any "person so hindered, delayed, or defrauded." Wait, Fraud. Conv. § 11; Bump, Fraud. Conv. 19.

That these transfers and conveyances were made with intent to hinder and delay the debtor's creditors is directly alleged in the bill, and is sufficiently shown by the facts, that the property included in them is all that the debtor had, at least in this state; that its value was largely in excess of the debt due Joseph Holladay, who is his brother; and that the debtor has since regularly received to his own use a large portion of the rents and profits thereof.

And, *lastly*, is the contract upon which the money was advanced by White to Elliott void for champerty?

And, *first*, in the mouth of Elliott, at least, this may be considered anything but a meritorious defense. In 1874, when he was needy and sore, pressed by rich and powerful parties, who sought to exclude him from his share in an enterprise in which he appears to have thought there were millions for him, he applied to White, the party for whose benefit this suit is brought, for aid in this struggle, who thereupon advanced him money to enable him to assert his rights in court and maintain himself generally, upon no other security for its repayment, with legal interest, than an assignment of his interest in the firm of Ben Holladay & Co., then involved in litigation.

The option or alternative contained in the writing of February 10th, by which White was given the election to take, instead of his money and interest, one-half of the railway property that might be awarded to Elliott in the suit with Holladay and Emmett, after deducting the trifling sum of a million dollars' worth of the company bonds for Elliott's individual use, and one hundred thousand dollars more for his private counsel, though undoubtedly champertous, as involving a division of the field or product of the litigation, is a distinct agreement from that involved in this suit. The assignment under which the plaintiff seeks to enforce the decree against Ben Holladay was not given to secure the performance of this option, but the repayment of the money loaned. The contingency upon which the right to exercise this option depended never occurred, for Elliott never obtained "the possession" of any of said property, or notified White thereof. This suit is brought to enforce the assignment given by Elliott as security for money loaned him under the writing of February 10th, which he has failed to repay. And while it does, in my judgment, steer clear of the champertous option clause, its maintenance does involve the recognition of the agreement under which the money was advanced to Elliott, to enable him to make good his defense in the suit with his partners; and if this is void for maintenance, the assignment falls with it. The assignment or security stands no better, in this respect, than the debt or contract out of which it arose, and for which it was given.

It does not appear that the courts of the state have ever passed on the question whether the old English law of maintenance is in force here as a part of the common law or not. The evident modern drift of both the English and American courts is in the contrary direction, and the old doctrine of maintenance, which includes champerty, is treated as something belonging to the past and not suited to the circumstances of this age. *Findon* v. *Parker*, 11 Mees. & W. 679; *Wright* v. *Tebbitts*, 91 U. S. 252; *McPherson* v. *Cox*, 96 U. S. 416; *Small* v. *Mott*, 22 Wend. 405; *Thalhimer* v. *Brinkerhoff*, 3 Cow. 643; *Richardson* v. *Rowland*, 40 Conn. 570; *Sedgwick* v. *Stanton*, 14 N. Y. 291; *Mathewson* v. *Fitch*, 22 Cal. 93; *Hoffman* v. *Vallejo*, 45 Cal. 566.

In *Small* v. *Mott, supra*, Chancellor WALWORTH says "that most of the absurd rules relative to maintenance, which are found in the early reports of the English courts of justice, were founded on the broad and sweeping provisions of the statutes" of Edw. I. and III., and Rich. II. For instance, chapters 25, 28, and 30 of 3 Edw. I., prohibited the king's officers, such as clerks, sheriffs, justices, or "stewards of great men," from taking part in quarrels depending in the king's courts, or maintaining any suits "hanging" in such courts for lands or other things on part or profit thereof.

There is no statute in Oregon against maintenance, and, by express enactment, a valid conveyance may be made of lands in the adverse possession of another, while choses in action may be sued on in the

name of the assignee.   Or. Laws, p. 516, § 8; p. 110, § 27.   It is not likely that this contract would be held void here for maintenance. But it is not necessary for this court to anticipate the action of the state courts on this question.

This contract was made in California, and in contemplation of law was to be fulfilled or performed there.   It has been held in that state since 1863 that there is no law there against any form of maintenance.   *Mathewson* v. *Fitch*, and *Hoffman* v. *Vallejo, supra*.   And the contract being valid there, is valid here.   Story, Conf. Laws, §§ 242, (1,) 279, 280.

But it is contended that the assignment or security taken for the performance of this contract related to property in Oregon, and could only be fulfilled or enforced here, and therefore the contract for the loan ought to be considered as made here, and its validity tested by the law of Oregon.   But the authorities are uniformly otherwise. Story, Conf. Laws, § 287; *De Wolf* v. *Johnson*, 10 Wheat. 367.   In the latter case, Mr. Justice JOHNSON, speaking for the court, says:

"Taking foreign security does not necessarily draw after it the consequences that the contract is to be fulfilled where the security is taken.   The legal fulfillment of a contract of loan on the part of the borrower is repayment of the money, and the security given is but the means of securing what he has contracted for, which, in the eye of the law, is to pay where he borrows, unless another place of payment be expressly designated by the contract."

The demurrer is overruled, and the defendants have 20 days in which to answer.